JOSEPH WILD & COMPANY *v.* PROVIDENT LIFE AND TRUST COMPANY, TRUSTEE OF WATKINSON & COMPANY, BANKRUPTS.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 190.   Argued April 29, 1909.—Decided May 24, 1909.

Where a creditor, who had no knowledge of the debtor's insolvency, has a claim upon an open account for goods sold and delivered during the period of four months before the adjudication in bankruptcy, the account being made of debts and credits, leaving a net amount due from the bankrupt estate, the payments made under such circumstances do not constitute preferences which the creditor is bound to surrender before proving his claim. *Yaple* v. *Dahl-Millikan Grocery Co.*, 193 U. S. 526, followed; *Pirie* v. *Trust Co.*, 182 U. S. 438, distinguished.

153 Fed. Rep. 562, reversed.

THE facts are stated in the opinion.

*Mr. Max L. Powell* and *Mr. Harris S. Sparhawk* for appellants:

The appellants were wholly ignorant of the insolvency of the bankrupts and there was no intent on the part of the bankrupts to prefer appellants. After insolvency and before bank-

ruptcy, the bankrupts' estate by reason of their dealings with appellants was enriched to the amount of $2,565.92.

To this extent it presents exactly the same situation found in *Jaquith* v. *Alden,* 189 U. S. 78, in which it was held that where all the goods were sold and delivered after the bankrupt's property had actually become insufficient to pay his debts, his estate was increased in value thereby to an amount in excess of the payments made.

This was not the fact in *Pirie* v. *Chicago Trust Co.,* 182 U. S. 438, in which case, the estate of the insolvent as it existed at the date of insolvency was diminished by the payment.

The attention of the court is directed to the importance that is given to the date of insolvency in these last two cases, as the only method of determining whether or not a particular creditor has obtained a greater percentage of his debt than any other creditor of the same class is to ascertain if during a period of insolvency the bankrupts' estate has been enriched by reason of the transactions in their entirety. The running account between the insolvent and the creditor may be variable, and during insolvency may show at times a diminishing of the estate; but if in the entirety of the transactions the estate is enriched, then the payments are not preferential.

In the case now before the court no sale was made after the payment. It must be remembered it was payment on a running account. The first payment by insolvents was followed by sales, all were within a period of insolvency, and are to be considered as parts of one continuous *bona fide* transaction kept alive by extension of new credits.

The object of the bankrupt act, so far as creditors are concerned, is to secure equality of distribution among them of the property of the bankrupt. Such object could not be secured if there were no provisions against preferences. *Pirie* v. *Chicago Title & Trust Co., supra.* A preference is a transfer of property which enables one of the creditors of a bankrupt to obtain a greater percentage of his debt than any other creditors

of the same class. Where a running account, with no knowledge of insolvency on the part of the creditor, and no intent to prefer, comprised within a period of insolvency, shows a net gain to the estate and a consequent loss to the creditor, that creditor has not been preferred, for that creditor does not receive a greater percentage of his debt than other creditors in the same class.

*Mr. Arthur G. Dickson* for appellees:

The history of the subject shows that the return of the innocently received preference by subsequent credits was an essential part of the theory which permitted the retention of the payments that had been received by the creditor during insolvency and within four months of bankruptcy. It is true that, in *Jaquith* v. *Alden*, 189 U. S. 78, the sale which was the last of the transactions was not large enough to be by itself a return of the payment just previously received, but it was at least a partial return thereof. Furthermore, the payments and sales were very closely inter-related, so that this court was able to regard all of the transactions as one continuing course of dealing, where payments had had the effect of inducing new sales. In *Jaquith* v. *Alden* there were, first, two sales, then two payments; next three sales, then a payment, and, lastly, a sale. The payments, therefore, kept the account alive and helped to increase the estate by inducing the extension of additional credits.

In the present case, the first sale was paid for and then there followed a number of sales. If the transactions had stopped there, this case would not be before this court. There was, however, a subsequent payment of a part of the account. This payment did not induce any subsequent credits; it was not so intermingled with other payments and sales as to entitle the creditor to ask that it be taken as part of a continuing transaction by which the estate was benefited. Its only effect was to reduce the estate, to take a part of the assets which then belonged to all of the creditors of the bankrupts and to give it to

one of them. No reasoning, however plausible, can rob this payment of that effect and it was, therefore, under the bankruptcy act of 1898, a preference.

The decision of the Circuit Court of Appeals in this case was in accord with its own previous opinion in the case of *Gans* v. *Ellison,* 114 Fed. Rep. 734.

"If, then, a creditor innocently preferred has given return credits afterwards, he has surrendered his preference to the extent of such return credits. To effectuate justice, both sides of the account are to be considered, in the case of a creditor who innocently has received preferences, and afterwards in good faith has given the debtor further credit, without security, for property which has become a part of the debtor's estate." See also *Kimball* v. *Rosenham Co.,* 114 Fed. Rep. 85; *In re Colton Export Co.,* 121 Fed. Rep. 663.

Although Circuit Judge Gray, in delivering the opinion in this case, admitted "that the authorities are not harmonious and do not satisfactorily dispose of the precise question here presented, there is no real difference of opinion between the judges of different circuits. In no case, with the exception of *In re Topliff,* 114 Fed. Rep. 323 (District Court of Massachusetts), has there been a decision enabling a creditor, whose last transaction with the bankrupt during insolvency and within four months of bankruptcy, has been the receipt of a payment, to retain such payment. In every other case in which the creditor has been permitted to retain payments received during insolvency and within the four months' period, those payments have been succeeded by new credits extended to the bankrupt.

For a history of the question herein involved see the following cases: *McKay* v. *Lee,* 105 Fed. Rep. 923; *In re Ryan,* 105 Fed. Rep. 760; *In re Southern Overall Mfg. Co.,* 111 Fed. Rep. 518; *Kahn* v. *Export & Com. Co.,* 115 Fed. Rep. 290; *In re E. O. Thompson's Sons,* 6 A. B. R. 663; aff'd in 7 A. B. R. 214, and *Gans* v. *Ellison,* 114 Fed. Rep. 734; *Peterson* v. *Nash Brothers,* 112 Fed. Rep. 311; *In re Beswick,* 7 A. B. R.

395; *Dickson* v. *Wyman*, 111 Fed. Rep. 726; *Morey Mercantile Co.* v. *Schiffer*, 114 Fed. Rep. 447; *Kimball* v. *Rosenham Co.*, 114 Fed. Rep. 85; *In re Sagor & Bro.*, 121 Fed. Rep. 658; *Jaquith* v. *Alden*, 189 U. S. 78; *Yaple* v. *Dahl-Millikan Grocery Co.*, 193 U. S. 526.

MR. JUSTICE MOODY delivered the opinion of the court.

The appellants, Joseph Wild & Company, offered for proof against the estate of George Watkinson & Company, who had been declared bankrupts, a claim of $2,565.92. The claim was allowed by the referee but disallowed by the District Court, except upon a surrender of an alleged preference of $634.78, which was received within four months of the adjudication. The judgment of the District Court was affirmed by the Circuit Court of Appeals.

The facts of the case are simple. The bankrupt became insolvent on or before January 1, 1901, but the claimants had no knowledge of their insolvency during the running of the account hereafter referred to, and the merchandise therein specified was sold and delivered in the ordinary course of business. The appellants sold and delivered merchandise in various items, beginning February 14, 1901, and ending October 8, 1901. The total price of the merchandise thus delivered was $3,377.28. There were payments on account on June 29 and October 10, amounting to $811.36, leaving the net amount by which the bankrupt estate was enriched $2,565.92. The last payment, on October 10, was $634.78, and was two days after the last sale and delivery of merchandise.

The single question in the case is whether that payment was a preference. It is conceded that it would not be a preference, in view of the other facts in the case, if it had been followed by a sale and delivery of goods of any value, however small. This concession is made necessary by the decision in *Jáquith* v. *Alden*, 189 U. S. 78, which is, in all respects, like the present case, except that two days after the payment, which was al-

leged to be a preference, merchandise of trifling value was sold and delivered to the bankrupt. But the decision in that case was not rested upon the fact of this slight sale subsequent to the last payment. It was rather put upon the broader principle that all the dealings between the creditor and the bankrupt were after the bankrupt's insolvency, and that their net effect was to enrich the bankrupt's estate by the total sales, less the total payments. The majority of the court thought these facts distinguished the case from *Pirie* v. *Trust Company,* 182 U. S. 438, though there was a difference of opinion upon that point. But all doubt was resolved in *Yaple* v. *Dahl-Millikan Grocery Co.,* 193 U. S. 526, where the precise question, which is now here, was decided by the court, and it was held, where a creditor has a claim upon an open account for goods sold and delivered during the period of four months before the adjudication in bankruptcy, the account being made up of debits and credits, leaving a net amount due from the bankrupt estate, that payments made under such circumstances did not constitute preferences which the creditor was bound to surrender before proving his claim in bankruptcy.

It follows that the judgment of the Circuit Court of Appeals was erroneous, and it must be

*Reversed.*